Thank you. Good afternoon. May it please the court. My name is Thomas Pamela appearing on behalf of the two petitioners in this matter. This is a removal case with a mother and son who applied for asylum withholding of removal and protection under the Convention Against Torture. The immigration judge denied their applications based primarily on an adverse credibility determination. We asserted in our brief that the adverse credibility determination was not supported by substantial evidence and did not take into account the totality of the circumstances. I would like to begin with the lead petitioner in this matter, the mother. The immigration judge held that she lacked credibility based mostly on her misstatement of the date of the kidnapping of her nephew. She had stated that it occurred in May 2014 when it actually occurred in March 2014. That is the only inconsistency I can see that is supported by the record and she later admitted that she was unsure of the date because she wasn't there personally during the kidnapping. So I don't believe that one inconsistency should render the lead petitioner to lack credibility and that's not supported by substantial evidence. I'll also note that the immigration judge stated that she testified to a threat her son received that was not included in any of the submissions. I will note that the judge did not give her an opportunity to explain whether that threat was actually omitted or whether it was distinct or not from the threats she did testify to. So I would not, I would posit that that is not an actual inconsistency supported by the record. Mr. Pamela? Yes. I'm sorry it's kind of since we can't see each other but I understand the thrust of your briefing focuses on the adverse credibility determination and of course if you want to focus your argument on that but I do have a preliminary question. Sure. If hypothetically we were to find that the adverse credibility determination was supported by substantial evidence does that mean that we should deny the petition or is there any other basis on which you argue that your client's qualified or established eligibility for asylum withholding of removal and protection under CAT? Right so even if the adverse credibility finding is upheld by the panel I would say that they still can show eligibility for at least the convention against torture application that they filed. I'll note that the immigration judge didn't really discuss credibility in the CAT analysis but stated that the CAT application was based on the petitioner's generalized fear of return to Honduras and the general crime there. I asserted in my brief that their CAT application was in fact based on very specific incidents that occurred to both petitioners in Honduras so the fact that immigration judge didn't really discuss that in her decision we would request a remand to get a proper analysis there. I'll also note the Board of Immigration Appeals did not discuss the merits of the applications at all in their decision. They only focused on the credibility issue. Sure so the CAT claim, if we can go back to that for a moment, I understood your briefing to argue a lot of the same evidence that was offered in support of the asylum and withholding claim with respect to your client's testimony about threats received in a various instance that occurred but that as I understood it came from their testimony and if the adverse credibility determination is upheld then the IJ deemed that the petitioner is not credible and did not give any weight to their testimony. So the testimony about threats and various incidents that your clients offered wouldn't be available to support the CAT claim. How do you, at least that's my take on it at this point, how do you react to that? So there was more evidence than just the testimony. We did submit I think it was the doctor's note regarding the ants shooting. There was a police report regarding the kidnapping of the cousin and there were other affidavits in support that were submitted. So there was other evidence apart from the testimony that let's go to that evidence then. So I know the declarations in the reports that you're speaking of and I've reviewed them but I think what's missing is a link between for example a doctor's note, a medical record that says that the petitioner's aunt was treated for being shot. There's nothing else in there that establishes that it was gang related or that it somehow then meant there was a threat to your clients and that's sort of the issue I had with each of those pieces of documentary evidence. If the testimony is out and you're left with these records, how did they establish specific threats that would establish past persecution, fear of future persecution, a reasonable fear of torture with acquiescence. That's the link that's missing that I didn't really see in your briefing before the BIA or this court. Can you respond to that? Sure, sure. So I think there was also a letter from the aunt herself talking about the shooting. I would assert that the minor petitioner was at least present during the shooting. I don't think the immigration judge or the BIA ever stated that they didn't believe that he was there. Right, but she said that it was petty criminals and she thought he was there. In your view, does that tie this to Mara 18? Yes, so one of the arguments that we submitted was that they have a fear of future torture or future persecution based on the minor petitioner being perceived as a witness by the criminals that did shoot the house while he was there. Even though he didn't personally report the incident to the police, his fear is that they'll find out that he was there and could be targeted subsequently based on him being perceived as a witness to that crime. So I do believe there's other evidence other than the testimony that does set them apart from the general public in Honduras. I know the immigration judge said that it's generalized fear just like the general public in Honduras, but there's other evidence apart from their testimony that shows that they have a particularized risk as well. You're running short on time. Do you want to save some time for rebuttal or maybe I should just ask first quickly, Judge Feinerman, did you have any questions before we hear from opposing counsel? No. Okay. Counsel, would you like to save some time for rebuttal? Yes, two minutes please. Thank you. Okay, let's hear from opposing counsel please. Good afternoon. May it please the court, this is Dana Camilleri for the attorney general. In this case, the agency properly considered the totality of the circumstances in finding that petitioners had not presented a credible claim for release. Petitioner's testimonies contained inconsistencies concerning the proximity of the threats perceived by petitioner, her son, her cousin's kidnapping, along with the drive-by shooting at his grandmother's house, and the timing of another cousin's murder. The documentary evidence showed the attacks occurred well before petitioner's son even encountered gang members. There were also inconsistencies between the two petitioner's testimony, their declarations, and internal inconsistencies in petitioner's son's testimony. They offer no real explanation for the- Forgive me, counsel. Can I get you to focus on what's bothering me, if I could just call that I'm not so concerned when, especially when years have gone by, people don't remember the precise dates. That doesn't surprise me. And it doesn't surprise me that a mother and son, you know, two different witnesses would maybe call out those dates differently. So it seems to me we have other documentary evidence that supports that these events happened, or maybe you want to take that as a hypothetical, assuming that I find that there is other evidence that doesn't depend upon so much on these victims' credibility as to the existence of these events. It seems to me more troubling when we look at the sequence of the events and whether the events motivated the actions of these claimants. Right, that's it. Sorry. Sorry, Your Honor. Go ahead. I guess that wasn't a question so much as I just wanted to focus. For me, that is a more productive conversation. Absolutely. And we totally agree. In the government's view, it's not just that they couldn't remember whether it happened in May or it happened in March. The problem is that both Petitioner and her son, for example, tied his cousin's kidnapping. The son testified that his cousin was released from being kidnapped and told him that he had been kidnapped because Petitioner's son had not joined the gang. But in reality, the documentary evidence only talks about the fact that his cousin was resisting recruitment himself and that that's why he had been kidnapped. And that, of course, happened months before Petitioner said that Petitioner's son was even approached for gang recruitment. So the problem is not that they're simply misremembering dates, that the way that they're being presented changes the motivations behind the kidnapping, the murder, and the drive-by shooting, which I think at various points they say was actually because the petty criminals who did that wanted to rob his grandmother's store. It was not related to any specific threats to Petitioner's son. And so that's the crux of the adverse credibility determination. And we think that there's substantial evidence to support it. But you don't, these things happened, right? The one cousin was kidnapped, one cousin was murdered, and the aunt was shot. Why isn't that enough? Why doesn't that establish, assuming we just hypothetically, we were to find there's substantial evidence to support the adverse credibility determination. We still have this information in the record, these declarations and reports. Why does the government argue that's not enough? Well, Your Honor, there's no alternative finding made by the board. The board did not adopt the IJ's alternative findings on the merit. They adopted the adverse credibility determination, which does, they can't prevail on asylum or holding of removal. In the context of Kat, we would argue they cannot prevail because this independent evidence doesn't show that they were targeted. It was other family members being her son. So I understand, I think what you're saying is the IJ offered some alternative reasoning with respect to the merits of the claims that the BIA did not reach. So if we were to conclude that the Petitioners were in fact credible, that the IJ's findings and the BIA's findings were not supported by substantial evidence, would we have to remand because the IJ did not reach the merits determination? Yes, remand would be the appropriate outcome. So is it your argument that if we affirm the adverse credibility determination, that alone is sufficient to defeat their claims? Certainly for asylum and withholding of removal. And as we argued about Kat, the evidence doesn't independently show more likely or not that they'll be tortured by or with the acquiescence of the Honduran government. There's no evidence of Honduran government involvement whatsoever, apart from the fact that his aunt and his cousin made a report. We have no further information on that. And as when you look at the sequence of events, the threats to Petitioner's son actually happened last, following all these other things that were motivated by apparently things that have nothing to do with Petitioner and her son. So they simply cannot meet their burden for Kat independently, just based on the documentary evidence. Did the BIA reach that issue with Kat? Yes, they did. Counsel, oh, go ahead, Judge Fineman, please. As to asylum, what was the basis for the BIA's decision? Was it that there was no past persecution, that there was no nexus, or both? Your Honor, the board actually didn't reach the merits because the adverse credibility determination is the focus of the denial for asylum and withholding of removal. But what's the interaction between the adverse credibility determination and the two grounds that are set forth in the statute, or the two components that are set forth in the statute, past persecution and nexus? Well, Your Honor, adverse credibility is sort of a baseline, and the agency is within its purview to deny an asylum or withholding of removal claim based on an adverse credibility determination. Counsel, are you taking the position that as a matter of law, an adverse credibility determination defeats an asylum or withholding claim? Even if there were other corroborating evidence? Really? No, yeah, there are certain exceptions, but in this case, we have an adverse credibility determination, which the board has affirmed, and the adverse credibility determination disposes of most of the petition for review, except for the CAC claim. Yeah, I just wanted to call your attention to the fact that I think in response to an earlier question, it seemed that you took the position that because there was an adverse credibility determination, the first two claims, asylum and withholding, were defeated as a matter of law. And so I appreciate your clarification, and that's not your position. No, I apologize. I did not mean to. That's all right. I just wanted to be clear. Why does the adverse credibility determination in this case defeat either past persecution or nexus or both? Because they haven't set forth a credible claim for any of those things. But if, let's say, the son testified credibly that certain things happened, but he got the order wrong, he wasn't incredible in total. He was incredible in part, in terms of the timing. The thing still happened, right? Well, as I was trying to point out, it's not just that he got the timeline wrong. It's the way that he tried to make his cousin's kidnapping a result of threats against him that had not even occurred yet. And his cousin, in his aunt's declaration and the police report, said that his cousin was targeted because his cousin had been threatened. So it's not just that these events happened in a different sequential order. It's the way the claim was presented in order to enhance their particular claim, when all the documentary evidence really says that this was a chain of somewhat unrelated events. Right. And then the question is, how does that bear on the components of an asylum claim that are set forth in the statute, past persecution and nexus? And if you could just look at the top page 10 of the IJ's opinion, where the IJ said, Respondent Isay's incredible testimony cast doubt on the legitimacy of the documentary evidence he submitted to his claim. Does that include the medical records? Does that include the police report? Your Honor, as the Ninth Circuit has held in Shrestha, the immigration judge can consider any relevant factor in considering an alien's credibility. And if this court finds that any one ground was supported by substantial evidence, then it should uphold the adverse credibility determination. I understand the immigration judge went on to make the alternative findings, but the board did not affirm those. And so they're not before us, not before the court. So did the IJ conclude because the son presented the timing in a way that was untrue, that nothing happened? There was no kidnapping, there was no shooting, there was no murder. I'm not sure that's what the agency found. I think the agency found that this was not a credible claim for relief. It was not clear what happened, and they had not met their burden of proof for asylum and withholding as a result of that adverse credibility determination. And there were some other inconsistencies that were identified by the agency, which we briefed. Anything further? Not for me. All right. Judge Beatty? I guess maybe we've covered it, but there's a case called Wang that talks about if there's any evidence after there's no testimony. So if there's adverse credibility determination and none of the testimony is considered, is there any other evidence that establishes a claim? And I don't know that I've gotten a straight answer from the government on what the agency did with that or what the government's position is on that. Is it your position that the agency then concluded that whatever was left of the documentary evidence just wasn't enough to establish the claim? Yes, that's correct. That's what the agency found. Okay. Anything further? Judge Beatty? No? Okay. All right. Mr. Pamir? Yes. Yes. Thank you. Just briefly, maybe I misunderstood counsel for oil, but the BI did not address the merits of the CAT application. I'm looking at AR5. They simply stated that the CAT application was based on the same statements the immigration judge found to be not credible and denied it based on that, not because of the merits. So I'll just reiterate, the BI did not address any of the merits of any of the applications in their decision. I also wanted to just briefly point out that the immigration judge in her decision, the BIA, continuously state that the inconsistencies were done seemingly on purpose to enhance the claim. I want to make clear that I'm in complete disagreement with that. First of all, the minor petitioner never stated that the kidnappers of his cousin threatened him because he refused to join the gang. He never said that. He said that he was threatened by them and that he needed to join. So it's very possible that the kidnapping still took place before the threats he received directly. So he never, there was never any reference to his refusal to join the gang during that kidnapping. This is again, this is a claim involving many, many incidences, and the combination of all of them is what led them to leave. The order of events is secondary to the fact that they actually happened and forced everyone and forced the mother and son to flee. The mistakes on the day was not done in an attempt to enhance the claim. And there was no single event that caused them to flee either. So thank you. Thank you both. Well, appreciate that argument and submit that case.
judges: Christen, Feinerman, Bade